**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| Global Signal Acquisitions IV LLC and Global Signal Acquisitions LLC, <br><br> Plaintiffs, <br><br> v. <br><br> William Ahders and Ellen Ahders, <br><br> Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiffs, Global Signal Acquisitions IV LLC and Global Signal Acquisitions LLC (collectively, "Plaintiffs"), by and through their undersigned attorneys, Gordon Rees Scully Mansukhani, LLP, hereby file the within Complaint against Defendants, William Ahders and Ellen Ahders (collectively, "Defendants") and allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

### **PARTIES**

1.      Plaintiff Global Signal Acquisitions IV LLC ("GSA IV") is a Delaware limited liability company with a principal place of business located at 8020 Katy Freeway, Houston, Texas 77024.  GSA IV's sole member is Global Signal Operating Partnership, L.P.

2.      Plaintiff Global Signal Acquisitions LLC ("GSA") is a Delaware limited liability company with a principal place of business located at 8020 Katy Freeway, Houston, Texas 77024. GSA's sole member is CC Holdings GS V LLC.

3.      CC Holdings GS V LLC is a Delaware limited liability company.  CC Holdings GS V LLC's sole member is Global Signal Operating Partnership, L.P.

1

4. Global Signal Operating Partnership, L.P. is a Delaware limited partnership. Global Signal Operating Partnership, L.P.'s partners are Global Signal GP LLC and CCGS Holdings Corp.

5. Global Signal GP LLC is a Delaware limited liability company. Global Signal GP LLC's sole member is CCGS Holdings Corp.

6. CCGS Holdings Corp. is a Delaware corporation with a principal place of business located in Delaware.

7. Neither GSA IV nor any of its members are citizens of North Carolina.

8. Neither GSA nor any of its members are citizens of North Carolina.

9. Upon information and belief, Defendant William Ahders is an adult individual who resides at 3216 Salisbury Highway, Statesville, Iredell County, North Carolina 28677 and is a citizen of North Carolina.

10. Upon information and belief, Defendant Ellen Ahders is an adult individual who resides at 3216 Salisbury Highway, Statesville, Iredell County, North Carolina 28677 and is a citizen of North Carolina.

11. Upon information and belief, Defendants are husband and wife.

**JURISDICTION AND VENUE**

12. This Honorable Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because the matters in controversy are valued at an amount in excess of $75,000, exclusive of interest and costs, and this dispute is between citizens of different states.

13. Defendants are subject to personal jurisdiction in this district, as both Defendants reside in this state and/or each regularly conduct business in the State of North Carolina.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendants reside in this district and all defendants reside in the State of North Carolina. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because substantial part of the events or omissions giving rise to the within claims occurred in this district and/or a substantial part of the property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS

### *History and Relationship of the Parties Regarding the Property in Question*

15.     The underlying dispute in this matter involves two (2) parcels of land located in Iredell County, North Carolina.

16.     The first parcel of relevant land is located at 3216 Salisbury Highway, Statesville, Iredell County, North Carolina 28677 (Parcel Identification No. 4773913295.000) ("Parcel 1" or the "Servient Estate").

17.     The second parcel of land implicated here is located at 3218 Salisbury Highway, Statesville, Iredell County, North Carolina 28677 (Parcel Identification No. 4773912170.000) ("Parcel 2" or the "Dominant Estate").

18.     Originally, Parcel 1 and Parcel 2 were owned together as a single parcel of land (the "Original Parcel") by Timothy J. Weaver and Susan J. Weaver, as husband and wife (the "Weavers").

19.     Prior to the severance of title in 2013, Parcel 1 was used to benefit Parcel 2 and the use of Parcel 1 was and is reasonably necessary for the use of Parcel 2.

20.     Since the severance of title in 2013 and continuing to this very day, Parcel 2 was and is landlocked and thus, to access, use, and enjoy Parcel 2, it was and is necessary to cross Parcel 1.

3

21.     Indeed, the only way to access Parcel 2 is by traversing over and through Parcel 1.

22.     A true and correct copy of the Iredell County GIS Map depicting the relationship between Parcel 1 and Parcel 2 is attached hereto as Exhibit A.

23.     On or about June 24, 1997, the Weavers purchased the Original Parcel via a North Carolina General Warranty Deed, recorded June 25, 1997, at Book 1030, Pages 398 to 399 in the Register of Deeds for Iredell County, North Carolina ("Iredell County Register of Deeds").

24.     In 2013, the Weavers subdivided the Original Parcel into present day Parcel 1 and Parcel 2 and sold Parcel 1 to James Burton Mauney and Lexia Lillian Mauney.

25.     As a result of this severance, Parcel 2 became landlocked.

26.     More specifically, on or about December 9, 2013, James and Lexia Mauney purchased Parcel 1 via a North Carolina General Warranty Deed, recorded December 9, 2013, at Book 2278, Pages 861 to 866 in the Iredell County Register of Deeds (the "Weaver-Mauney Deed").  A true and correct copy of the Weaver-Mauney Deed is attached hereto as Exhibit B.

27.     In relevant part, the Weaver-Mauney Deed states:

> LESS AND EXCEPTED FROM THE ABOVE DESCRIBED PROPERTY is that property shown as Tract 2 on the above referenced survey and designated as 2.885 acres, more or less, and being described by metes and bounds as follows:
>
> BEGINNING at a rebar set in the boundary line for the 2.885 acre tract, said point being located North 62 deg. 30 min. 39 sec. East 292.20 feet from a rebar found in the line of Jack B. Borders, Sr. (Deed Book 958, Page 1337, Iredell County Registry) said rebar having grid coordinates of N: 730,780.7' and E: 1,479,012.02' (NAD 83); AND RUNS THENCE FROM SAID BEGINNING POINT on a curve to the right, said curve having a radius of 200.00 feet for an arc length of 314.16 and a chord bearing of North 41 deg. 08 min. 46 sec. West 282.84 feet; thence another line along a curve to the right having a radius of 200.00 feet for an arc length of 579.73 feet and a chord bearing of North 86 deg. 53 min. 41 sec. East 397.05 feet to a point which marks the centerline of a proposed 25 foot easement to serve this property; thence another line along a curve to

4

the right have a radius of 200.00 feet for an arc length of 362.74 feet and a chord bearing of South 41 deg. 53 min. 41 sec. West 315.03 feet to the point and place of Beginning.

Exhibit B.

28.    Further, the Weaver-Mauney Deed reserved the following easements for the benefit

of Parcel 2:

> ***The Grantors herein do hereby reserve unto themselves an easement across the property conveyed herein 25 feet in width more particularly described on the attached survey, to serve the 2.885 acre tract, for ingress, egress and regress over, upon and across the property encumbered by the easement and an easement for the purposes of installing, using, repairing and maintaining the improvements now located or to be constructed upon the 2.885 acre tract including but not limited to installing, repairing, constructing and maintaining utilities associated with the present and future use of the 2.885 acre tract***, all of the described purposes may be performed within any portion of said 25 feet easement area, the centerline of said easement being described as follows:
>
> BEGINNING at a point in the centerline of said easement located in the southern right of way margin of U.S. Highway 70, said beginning point being located North 88 deg. 03 min. 05 sec. West 228.23 feet from a rebar set, which is a common corner of NCDOT (Deed Book 1326, Page 2363, Iredell County Registry, and running the following courses and distances: (1) South 05 deg. 01 min. 42 sec. West 251.90 feet; (2) South 12 deg. 03 min. 22 sec. East 43.95 feet; (3) South 30 deg. 31 min. 13 sec. East 40.55 feet; (4) South 26 deg. 01 min. 29 sec. East 124.08 feet; (5) South 20 deg. 38 min. 02 sec. East 30.75 feet; (6) South 05 deg. 20 min. 29 sec. West 31.45 feet; (7) South 37 deg. 40 min. 52 sec. West 35.78 feet; (8) South 74 deg. 01 min. 20 sec. West 95.96 feet; (9) South 27 deg. 40 min. 23 sec. West 38.58 feet; (10) South 22 deg. 04 min. 36 sec. East 97.00 feet; (11) South 28 deg. 35 min. 42 sec. West 36.23 feet; (12) South 69 deg. 54 min. 53 sec. West 77.62 feet to a point in the "New Line" for the Cell Tower Lease Lot shown on survey; (13) thence South 69 deg. 54 min. 53 sec. West 158.27 feet to a point in the cell tower lease lot.
>
> This reservation of easement is executed and delivered and said easement is reserved upon the following conditions:

5

1.     The Grantors shall be responsible for all of the cost of maintenance, service, repairs associated with improvements made and maintained by the Grantors within the easement area.

2.     Any land disturbed by Grantors pursuant to their exercising their rights under this easement agreement shall be substantially restored to its original condition.

3.     The Grantee agrees to keep said easement herein reserved free from hindrance or obstruction, and not to construct or place any structure or fill on or over the easement herein granted, nor to endanger the structural integrity of the improvements made by the Grantors within the easement area by any construction activities or otherwise.

4.     This easement, agreement, and conditions are appurtenant to and run with the land and are binding upon both the Grantors and the Grantees their heirs, administrators, executors, successors and assigns in interests.

(collectively, the "Easement").  Exhibit B (emphasis added).

29.     The severance of Parcel 2 from Parcel 1 cut Parcel 2 off or otherwise severed and/or isolated it completely from the nearest public road ("U.S. 70"), thereby necessitating the Easement.

30.     Not only does the Easement provide for unfettered access across and through Parcel 1 for ingress, egress, and regress, it includes an easement "for the purposes of installing, using, repairing and maintaining the improvements now located or to be constructed upon the 2.885 acre tract including but not limited to installing, repairing, constructing and maintaining utilities associated with the present and future use of the 2.885 acre tract."  Exhibit B.

31.     Thus, the Easement permits the installation and use of improvements, including, without limitation, utilities through and across Parcel 1 for the benefit of Parcel 2, including the Leased Premises and/or the Tower Site (each defined below) located on Parcel 2.

32.     On or about December 12, 2017, Lexia Lillian Mauney transferred her interest in Parcel 1 to James Burton Mauney via North Carolina Quitclaim Deed, recorded December 13,

6

2017, at Book 2528, Pages 2044 to 2049 in the Iredell County Register of Deeds (the "Mauney Quitclaim Deed").

33.     The Mauney Quitclaim Deed expressly reserved the Easement under the Weaver-Mauney Deed.

34.     Upon information and belief, at some point on or between December 12, 2017 and October 7, 2020, James Burton Mauney divided his interest in Parcel 1, whereby he retained an interest in Parcel 1 and granted the remaining portion of the unretained interest in Parcel 1 to Samantha Lyne Mauney via an unrecorded instrument.

35.     On or about October 7, 2020, Defendants purchased Parcel 1 from James Burton Mauney and Samantha Lyne Mauney via a North Carolina General Warranty Deed, recorded October 9, 2020, at Book 2742, Pages 1530 to 1532 in the Iredell County Register of Deeds (the "Mauney-Ahders Deed").  The Mauney-Ahders Deed is attached hereto as Exhibit C.

36.     As set forth in the Mauney-Ahders Deed, Defendants took Parcel 1 subject to the Easement as follows:

> ***The Grantors, shown in Deed Book 2278, Page 861, Iredell County Registry, do hereby reserve unto themselves an easement across the property conveyed herein 25 feet in width more particularly described on the attached survey, to serve the 2.885 acre tract, for ingress, egress and regress over, upon and across the property encumbered by the easement and an easement for the purposes of installing, using, repairing, and maintaining the improvements now located or to be constructed upon the 2.885 acre tract including but not limited to installing, repairing, constructing, and maintaining utilities associated with the present and future use of the 2.885 acre tract, all of the described purposes may be performed within any portion of said 25 foot easement area***, the centerline of said easement being described as follows:
>
> BEGINNING at a point in the centerline of said easement located in the southern right of way margin of U.S. Highway 70, said beginning point being located North 88 deg. 03 min. 05 sec. West 228.23 feet from a rebar set, which is a common corner of NCDOT

(Deed Book 1326, Page 2363, Iredell County Registry); and running the following courses and distances: (1) South 05 deg. 01 min. 42 sec. West 251.90 feet; (2) South 12 deg. 03 min. 22 sec. East 43.95 feet; (3) South 30 deg. 31 min. 13 sec. East 40.55 feet[;] (4) South 26 deg. 01 min. 29 sec. East 124.08 feet; (5) South 20 deg. 38 min. 02 sec. East 30.75 feet; (6) South 05 deg. 20 min. 29 sec. West 31.45 feet; (7) South 37 deg. 40 min. 52 sec. West 35.78 feet; (8) South 74 deg. 01 min. 20 sec. West 95.96 feet; (9) South 27 deg. 40 min. 23 sec. West 38.58 feet; (10) South 22 deg. 04 min. 36 sec. East 97.00 feet; (11) South 28 deg. 35min. 42 sec. West 36.23 feet; (12) South 69 deg. 54 min. 53 sec. West 77.62 feet to a point in the "New Line" for the Cell Tower Lease Lot shown on survey; (13) thence South 69 deg. 54 min. 53 sec.  West 158.27 feet to a point in the cell tower lease lot.

Said reservation of easement is executed and delivered and said easement is reserved upon the condition set forth in deed recorded in Book 2278 Page 861 in the Iredell County Registry.

Exhibit C (emphasis added).

37.     Upon information and belief, Defendants jointly own Parcel 1.

38.     On or about June 21, 2021, Plaintiff GSA IV purchased Parcel 2 from the Weavers via a North Carolina General Warranty Deed, recorded June 23, 2021, at Book 2825, Pages 382 to 387 in the Iredell County Register of Deeds (the "Weaver-GSA IV Deed").  A true and correct copy of the Weaver-GSA IV Deed is attached hereto as Exhibit D.

39.     In relevant part, the Weaver-GSA IV Deed conveyed Parcel 2, along with:

[A]n easement across that property conveyed by Grantors to James Burton Mauney and wife, Lexia Lillian Mauney pursuant to that deed dated December 9, 2013, and recorded on December 9, 2013, in the Iredell County Register of Deeds in Book 2278, Page 861, said easement being 25 feet in width and more particularly described on the attached survey, to serve the 2.885 acre tract being conveyed to Grantee herein, for ingress, egress and regress over, upon and across the property encumbered by the easement and for the purposes of installing, using, repairing and maintaining the improvements now located or to be constructed upon the 2.885 acre tract, including but not limited to, installing, repairing, constructing and maintaining within said easement utilities associated with the present and future use of the 2.885 acre tract. All of the described

8

purposes may be performed within any portion of said 25 feet easement area, the centerline of said easement being described as follows:

BEGINNING at a point in the centerline of said easement located in the southern right of way margin of U.S. Highway 70, said beginning point being located North 88 deg. 03 min. 05 sec. West 228.23 feet from a rebar set, which is a common corner of NCDOT (Deed Book 1326, Page 2363, Iredell County Registry), and running the following courses and distances: (1) South 05 deg. 01 min. 42 sec. West 251.90 feet; (2) South 12 deg. 03 min. 22 sec. East 43.95 feet; (3) South 30 deg. 31 min. 13 sec. East 40.55 feet; (4) South 26 deg. 01 min. 29 sec. East 124.08 feet; (5) South 20 deg. 38 min. 02 sec. East 30.75 feet; (6) South 05 deg. 20 min. 29 sec. West 31.45 feet; (7) South 37 deg. 40 min. 52 sec. West 35.78 feet; (8) South 74 deg. 01 min. 20 sec. West 95.96 feet; (9) South 27 deg. 40 min. 23 sec. West 38.58 feet; (10) South 22 deg. 04 min. 36 sec. East 97.00 feet; (11) South 28 deg. 35min. 42 sec. West 36.23 feet; (12) South 69 deg. 54 min. 53 sec. West 77.62 feet to a point in the "New Line" for the Cell Tower Lease Lot shown on survey; (13) thence South 69 deg. 54 min. 53 sec.  West 158.27 feet to a point in the 2.885 acre tract being conveyed herein; provided, however that the foregoing easement shall run from the beginning point only so far as it intersects with the boundary of the 2.885 acre tract being conveyed herein and shall not proceed within the 2.885 acre tract.

(1)     Grantee shall be responsible for the cost of maintenance, service, and repairs associated with any improvements made and maintained by Grantee within said easement area.

(2)     Any lands disturbed by Grantee in exercising its rights under the easement granted herein shall be substantially restored to its original condition.

(3)     This easement and the conditions in (1) and (2) above are appurtenant to and run with the land and are binding upon and inure to the benefit of Grantee and its heirs, administrators, executors, successors and assigns.

Exhibit D.

40.     Plaintiff GSA IV owns Parcel 2.

9

41.     Because Parcel 2 is landlocked, the twenty-five (25) feet wide access road across Defendants' Parcel 1—as reflected in the Weaver-Mauney Deed and the Weaver-GSA IV Deed—is the only way of ingress, egress, and/or regress from U.S. 70 to Plaintiff GSA IV's Parcel 2.

42.     This road has been used by Plaintiffs and their predecessors since before the 2013 severance of title.

43.     Defendants purchased Parcel 1 with full knowledge of and subject to said road and the Easement.

### The Lease between Plaintiff GSA IV and Plaintiff GSA

44.     On or about September 24, 2002, the Weavers, as landlords, entered into an Option and Lease Agreement (the "Original Lease") with AT&T Wireless PCS, LLC, by and through its member, AT&T Wireless Services, Inc. d/b/a AT&T WIRELESS (the "Original Tenant").

45.     Pursuant to the Original Lease, the Weavers leased to the Original Tenant a 10,000-square-foot portion of land (the "Leased Premises") located on the Original Parcel (now Parcel 2), for the purpose or operating a wireless communications facility, including a communications tower and related improvements (the "Tower Site").

46.     The Original Lease was memorialized via a Memorandum of Lease, recorded August 28, 2003, at Book 1478, Pages 2279 to 2287 in the Iredell County Register of Deeds (the "Memorandum of Original Lease").  A true and correct copy of the Memorandum of Original Lease is attached hereto as Exhibit E.

47.     On or about September 29, 2004, the Weavers and the Original Tenant entered into an unrecorded First Amendment to Option and Lease Agreement (the "First Amendment").  A true and correct copy of the First Amendment, lightly redacted to protect GSA's proprietary and confidential business information, is attached hereto as Exhibit F.

48.     On or about June 30, 2005, AWS Network NEWCO, LLC, successor in interest to the Original Tenant, assigned all of its right, title and interest in the Original Lease to Plaintiff GSA pursuant to a Master Bill of Sale, Assignment and Assumption Agreement, recorded August 31, 2005, at Book 1677, Pages 310 to 344 in the Iredell County Register of Deeds (the "Master Bill of Sale"). A true and correct copy of the Master Bill of Sale is attached hereto as Exhibit G.

49.     On or about February 5, 2008, Plaintiff GSA executed an Affidavit of Facts Relating to Leasehold Interest, recorded February 22, 2008, at Book 1919, Pages 798 to 838 in the Iredell County Registry of Deeds (the "Affidavit"), which substituted the description of Leased Premises with a survey attached to the Affidavit. A true and correct copy of the Affidavit is attached hereto as Exhibit H.

50.     On or about November 13, 2013, the Weavers and Plaintiff GSA entered into a Second Amendment to Option and Lease Agreement (the "Second Amendment", and together with the Original Lease and the First Amendment, the "Lease"). A true and correct copy of the Second Amendment, lightly redacted to protect GSA's proprietary and confidential business information, is attached hereto as Exhibit I.

51.     The Second Amendment was memorialized via a Memorandum of Second Amendment to Option and Lease Agreement, recorded November 14, 2013, at Book 2274, Pages 2407 to 2413, and November 21, 2013 at Book 2275, Pages 2492 to 2496 in the Iredell County Registry of Deeds (the "Memorandum of Second Amendment"). A true and correct copy of the Memorandum of Second Amendment is attached hereto as Exhibit J.

52.     On or about June 21, 2021, in conjunction with the Weaver-GSA IV Deed, the Weavers assigned all of their right, title and interest as the "Landlord" under the Lease to Plaintiff GSA IV pursuant to an Assignment Agreement, recorded June 23, 2021, at Book 2825, Pages 388

11

to 392 (the "Assignment Agreement"). A true and correct copy of the Assignment Agreement is attached hereto as Exhibit K.

53. As a result of the transactions described above, Plaintiff GSA IV is the owner of Parcel 2 and the "Landlord" under the Lease, and Plaintiff GSA is the "Tenant" under the Lease.

54. In accordance with the Lease, Plaintiff GSA subleases the Leased Premises and Tower Site to wireless carrier providers who, in turn, provide wireless communication services to the surrounding community.

55. The Lease provides, in pertinent part, as follows:

> **1.** **OPTION TO LEASE.** (a) Landlord hereby grants to Tenant an option (the "Option") to lease a portion of the Property measuring approximately <u>10,000</u> square feet as described on attached Exhibit 1, ***together with unrestricted access for Tenant's uses from the nearest public right-of-way along the Property*** as described on the attached **Exhibit 1** (collectively the "Premises"). …

***

> **2.** **PERMITTED USE.** Tenant may use the Premises for the transmission and reception of communications signals and the installation, maintenance, operation, repair and replacement of its communications fixtures and related equipment, cables, accessories and improvements, which may include a suitable support structure, associated antennas, equipment shelters or cabinets and fencing and any other items necessary to the successful and secure use of the Premises (collective, the "Communications Facility"); such use may include the right to test, survey and review title on the Property (collectively, the "Permitted Use"). . . . Tenant has the right to install and operate transmission cables from the equipment shelter or cabinet to the antennas, electric lines from the main feed to the equipment shelter or cabinet and communications lines from the main entry point to the equipment shelter or cabinet, and to make Property improvements, alterations, or additions appropriate for Tenant's use ("Tenant Changes"). Tenant Changes include the right to construct a fence around the Premises and undertake any other appropriate means to secure the Premises. . . . Tenant has the right to modify, supplement, replace, upgrade, expand the equipment, increase the number of antennas or relocate the Communication

12

Facility within the Premises at any time during the term of this Agreement. Tenant will be allowed to make such alterations to the Property in order to accomplish Tenant's Changes or to insure that Tenant's Communication Facility complies with applicable federal, state or local laws, rules or regulations.

\*\*\*

**12.** **ACCESS.** At all times throughout the Term of this Agreement, and at no additional charge to Tenant, ***Tenant and its employees, agents, and subcontractors, will have twenty-four (24) hour, seven (7) day pedestrian and vehicular access to and over the Property, from an open and improved public road to the Premises, for the installation, maintenance and operation of the Communication Facility and any utilities serving the Premises*** and Landlord hereby grants to Tenant an easement for such access. …

\*\*\*

**16.** **ASSIGNMENT/SUBLEASE.** Tenant will have the right to assign or sublet this Agreement, in whole or in part, without Landlord's consent. Upon notification to Landlord of such assignment or sublease, Tenant will be relieved of all future performance, liabilities and obligations under this Agreement.

Exhibit G.

56. The Lease will remain in effect until April 27, 2103, unless sooner terminated in accordance with its terms.

57. The Lease remains in full force and effect as of the date of this filing.

58. Collectively, under the Lease, Easement (as reflected in the Weaver-Mauney Deed and the Weaver-GSA IV Deed), Assignment Agreement, and applicable law, Plaintiffs have the right, both express and implied, to use Parcel 1 to access, install, and maintain utilities for the benefit of Parcel 2 and the Leased Premises located thereon.

13

*Defendants Unlawful Interference with Plaintiffs' Access to*
*Parcel 2, the Leased Premises, and the Tower Site*

59.     Defendants knew and were on actual notice of the Lease upon purchasing Parcel 1 on October 7, 2020.

60.     Defendants knew and were on actual notice of the Easement upon purchasing Parcel 1 on October 7, 2020.

61.     Additionally, the Tower Site was in operation, open, obvious, and known by Defendants to be on Parcel 2 when Defendants purchased Parcel 1.

62.     Under the agreements and applicable law, Plaintiffs had and have a right to use Parcel 1 to access Parcel 2 and the Leased Premises.

63.     Nevertheless, since at least April of 2022, Defendants have repeatedly deprived Plaintiff GSA IV, Plaintiff GSA, and their subtenants of their access rights, which negatively impacts their respective businesses and the ability of the wireless carrier subtenants to operate their equipment on the Tower Site.

64.     While Defendants have intermittently provided limited access since April 2022 so that Plaintiffs could perform limited maintenance and construction at or on the Tower Site, in recent months, Plaintiff GSA IV, Plaintiff GSA and its subtenants have been completely deprived of access despite their need to perform construction and maintenance necessary to ensure uninterrupted wireless communications, including 911 service, to the local community and first responders.

65.     For instance, in or around August of 2022, Defendants attached a new lock to the gate that spans the road located on Parcel 1, thereby precluding Plaintiffs' from accessing Parcel 2 altogether.  This was followed by a series of instances, occurring periodically in 2022 and 2023, in which Defendants denied, interfered with, or otherwise limited GSA and its customer

14

subtenants' access to the road on Parcel 1 which, in turn, prevented them from freely accessing their own property located on and including Parcel 2.

66.     Most recently, on or about April 17, 2024, Plaintiff GSA and/or its customer DISH again attempted to access Parcel 2, the Leased Premises, and/or the Tower Site via the Easement.

67.     However, Defendants restricted and/or prevented Plaintiff GSA and/or its customer DISH from accessing Parcel 2, the Leased Premises, and/or the Tower Site via the Easement at that time.

68.     Since acquiring Parcel 1, Defendants have known of Plaintiffs' contractual and business relationships with its wireless carrier subtenants and the wireless carrier subtenants' need to have unfettered access to the Leased Premises and the Tower Site in order to operate and maintain their respective networks.

69.     Plaintiffs' and the subtenants' right(s) to unfettered access was and is critical to the safe and successful operation of the Tower Site, as the equipment affixed to the cell tower and housed adjacent to it requires regular monitoring, maintenance, and replacement, and occasionally requires immediate/emergency attention.

70.     Defendants' refusal to facilitate access to the Tower Site has a direct, negative impact on the local customers in the coverage area and may also impact the ability of residents to access wireless and 911 emergency services.

71.     Even though Defendants have an explicit obligation to provide Plaintiffs, their subtenants and contractors access to Parcel 2 and the Leased Premises under the terms Lease, Easement (as reflected in the Weaver-Mauney Deed and the Weaver-GSA IV Deed), and Assignment Agreement, Defendants have refused to provide access over and through Parcel 1 to Parcel 2 and the Tower Site.

72. At all times relevant hereto, Plaintiffs, their customers, and/or all representatives on their behalf acted lawfully and in accordance with their rights under the Easement and Lease.

73. At all times relevant hereto, Defendants lacked a lawful and/or legal justification for restricting and/or preventing Plaintiffs and their subtenant customers, and/or representatives acting on their behalf, from accessing Parcel 2, the Leased Premises, and/or the Tower Site via the Easement and Lease.

74. Defendants' obstructive conduct has substantially interfered with Plaintiffs' use and enjoyment of Parcel 2 and the Leased Premises, which substantial interference has resulted in significant annoyance and material injury to Plaintiffs' rights to and interests in Parcel 2, the Leased Premises, and the Tower Site.

75. It is apparent from Defendants' pattern of obstructive conduct that they are acting and will continue to act intentionally and in bad faith, in violation of Plaintiffs' rights under the Easement, Lease, and applicable law.

76. Defendants' acts and omissions described above were and are malicious, oppressive, and/or committed recklessly with a wanton disregard for Plaintiffs and Plaintiffs' real property rights.

77. As a result of the conduct complained of herein, Plaintiffs are entitled to compensatory damages in excess of $75,000 for, at a minimum, the loss of use of Parcel 2, the Leased Premises, and Tower Site, and the diminution in value of Parcel 2 and the leasehold interest.

78. Additionally, Defendants' failure to cooperate and refusal to permit access has threatened the local communities who rely upon the wireless services provided by the Tower Site for work, school, and safety. Thus, injunctive relief enjoining Defendants' interference with

16

Plaintiffs' access rights is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Specifically, given that the equipment affixed and adjacent to the Tower Site requires regular monitoring, maintenance, and/or replacement in order to function properly, the wireless networks facilitated by the Tower Site will cease functioning if Defendants' wrongful conduct persists.

79. Moreover, Defendants' failure to cooperate and refusal to permit access has caused and will continue to cause Plaintiffs to suffer damage to both its well-established and valuable business relationships with its subtenant customers, and its reputation in the wireless communications industry generally, for which Plaintiffs are entitled to compensation and consequential damages.

80. Further, as a result of the Defendants' willful, intentional, bad faith, frivolous, unlawful, and tortious acts and omissions, including their interference with Plaintiffs' real property rights, Plaintiffs are entitled to recover punitive or exemplary damages.

81. All conditions precedent to the filing of this action have been met or waived by the parties.

## COUNT I – INTERFERENCE WITH EASEMENT
### *Plaintiff GSA IV v. Defendants*

82. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

83. Plaintiff GSA IV has a right, both express and implied, to use Parcel 1 to access the landlocked Parcel 2.

84. Defendants are actively interfering with and obstructing Plaintiff GSA IV's use and enjoyment of the Easement and, in turn, Parcel 2.

17

85. Defendants have interfered with and obstructed Plaintiff GSA IV's use and enjoyment of the Easement by precluding Plaintiff GSA IV from entering or using the Easement for purposes of accessing Parcel 2.

86. Defendants' conduct has substantially and unreasonably interfered with Plaintiff GSA IV's use and enjoyment of Parcel 2.

87. Defendants deliberately and maliciously interfered with or obstructed Plaintiff GSA IV's use of the Easement and access to Parcel 2 for the purpose of injuring Plaintiff GSA IV.

88. As a direct and proximate result of Defendants' interference with or obstruction of Plaintiff GSA IV's use of the Easement and access to Parcel 2, as described herein, Plaintiff GSA IV has suffered and will continue to suffer damages for the loss of use of the Easement and Parcel 2 and the diminution of value of Parcel 2 in an amount to be proven at trial in excess of $75,000, including, but not limited to, general, compensatory, consequential, and punitive damages.

89. Plaintiff GSA IV further prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants to cease and abate said interference.

90. Plaintiffs are entitled to and demand judgment against Defendants for damages in excess of $75,000, together with and including interest, costs, expenses, punitive damages, and attorneys' fees, and Plaintiffs further request that this Honorable Court enter an injunction and/or award specific performance requiring Defendants to act in accordance with the Easement and provide Plaintiffs with unfettered access to Parcel 2, the Leased Premises, and the Tower Site, and award such other and further relief as this Court deems just and proper.

### COUNT II – INTERFERENCE WITH EASEMENT
#### *Plaintiff GSA v. Defendants*

91. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

92.     Plaintiff GSA has a right as the tenant under the Lease to use Parcel 1 to access the landlocked Parcel 2 and the Leased Premises.

93.     Defendants are actively interfering with and obstructing Plaintiff GSA's use and enjoyment of the Easement and, in turn, Parcel 2.

94.     Defendants have interfered with and obstructed Plaintiff GSA's use and enjoyment of the Easement by precluding Plaintiff GSA from entering or using the Easement for purposes of accessing, maintaining, and operating the Tower Site.

95.     Defendants' conduct has substantially and unreasonably interfered with Plaintiff GSA's use and enjoyment of Parcel 2, the Leased Premises, and the Tower Site.

96.     In doing so, Defendants have knowingly and willfully placed at risk critical wireless and internet services utilized by, at least, the local communities surrounding the Tower Site who rely on the Tower Site for such services.

97.     Defendants deliberately and maliciously interfered with or obstructed Plaintiff GSA's use of the Easement and access to the Leased Premises and Tower Site for the purpose of injuring Plaintiff GSA.

98.     As a direct and proximate result of Defendants' interference with or obstruction of Plaintiff GSA's use of the Easement and access to Parcel 2, as described herein, Plaintiff GSA IV has suffered and will continue to suffer damages for the loss of use of the Easement and the Leased Premises and the diminution of value of the Leased Premises and the Tower Site in an amount to be proven at trial in excess of $75,000, including, but not limited to, general, compensatory, consequential, and punitive damages.

99.     Plaintiff GSA further prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants to cease and abate said interference.

100.     Plaintiffs demand and are entitled to judgment against Defendants for damages in excess of $75,000, together with and including interest, costs, expenses, punitive damages, and attorneys' fees, and Plaintiffs further request that this Honorable Court enter an injunction and/or award specific performance requiring Defendants to act in accordance with the Easement and provide Plaintiffs with unfettered access to Parcel 2, the Leased Premises, and the Tower Site, and award such other and further relief as this Court deems just and proper.

### COUNT III – NUISANCE
### *Plaintiff GSA IV v. Defendants*

101.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

102.     Plaintiff GSA IV has a right to use Parcel 1 to access the landlocked Parcel 2.

103.     Defendants are actively interfering with and obstructing Plaintiff GSA IV's use and enjoyment of the Easement and, in turn, Parcel 2.

104.     Defendants' interference with Plaintiff GSA IV's access to and use of Parcel 2 is substantial and unreasonable and the interference has created a nuisance.

105.     The nuisance created by Defendants is causing damages to Plaintiff GSA IV's interest in the Easement and Parcel 2.

106.     As a direct and proximate result of Defendants' conduct, as described herein, Plaintiff GSA IV has suffered and will continue to suffer damages in an amount to be proven at trial in excess of $75,000, including, but not limited to, general, compensatory, consequential, and punitive damages.

107.     Plaintiff GSA IV further prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants to cease and abate said nuisance.

108. Plaintiffs demand and are entitled to judgment against Defendants for damages in excess of $75,000, together with and including interest, costs, expenses, punitive damages, and attorneys' fees, and Plaintiffs further request that this Honorable Court enter an injunction and/or award specific performance requiring Defendants to act in accordance with the Easement and provide Plaintiffs with unfettered access to Parcel 2, the Leased Premises, and/or the Tower Site, and award such other and further relief as this Court deems just and proper.

## COUNT IV – NUISANCE
### *Plaintiff GSA v. Defendants*

109. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

110. Plaintiff GSA has a right as the tenant under the Lease to use Parcel 1 to access the landlocked Parcel 2 and the Leased Premises.

111. Plaintiff GSA has a right to use the Leased Premises to operate and maintain the Tower Site.

112. Defendants are actively interfering with and obstructing Plaintiff GSA's use and enjoyment of the Easement and, in turn, the Leased Premises.

113. Defendants' interference with Plaintiff GSA's access to and use of the Leased Premises is substantial and unreasonable and the interference has created a nuisance.

114. The nuisance created by Defendants is causing damages to Plaintiff GSA's interest in the Easement, Leased Premises, and the Tower Site.

115. As a direct and proximate result of Defendants' conduct, as described herein, Plaintiff GSA has suffered and will continue to suffer damages in an amount to be proven at trial in excess of $75,000, including, but not limited to, general, compensatory, consequential, and punitive damages.

116. Plaintiff GSA further prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants to cease and abate said nuisance.

117. Plaintiffs demand and are entitled to judgment against Defendants for damages in excess of $75,000, together with and including interest, costs, expenses, punitive damages, and attorneys' fees, and Plaintiffs further request that this Honorable Court enter an injunction and/or award specific performance requiring Defendants to act in accordance with the Easement and provide Plaintiffs with unfettered access to Parcel 2, the Leased Premises, and the Tower Site, and award such other and further relief as this Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### *Plaintiff GSA v. Defendants*

118. Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

119. Since acquiring Parcel 1 on October 7, 2020, Defendants have known of Plaintiff GSA's existing contractual and/or business relationship with wireless carrier subtenants and/or Plaintiff GSA's obligations to provide these carriers with the requisite space and access to deploy their networks.

120. Specifically, Defendants have known of Plaintiff GSA's existing contractual and/or business relationship with Plaintiff GSA's subtenant customers such as DISH and AT&T, among others, and of the need to perform the modifications in order to ensure that said customers' local wireless network remains viable and fully functional.

121. As explained above, despite this knowledge, Defendants acted with an improper motive and by improper means to prevent the performance of the contract(s) between Plaintiff GSA and its subtenant customers.

122.     Defendants' continued unlawful acts and omissions, as described above have, could result in breaches of the contractual relationships between Plaintiff GSA and its subtenant customers.

123.     Defendants' conduct has played an active and substantial part in causing or potentially causing Plaintiff GSA to lose the benefits of their contracts with its subtenant customers.

124.     Defendants' conduct has or may hinder Plaintiff GSA's performance of its obligations to its subtenant customers.

125.     Defendants had no justification or privilege to engage in the conduct complained of herein.

126.     The contract(s) between Plaintiff GSA and its subtenant customers would have otherwise been performed but for the acts and omissions of Defendants.

127.     Defendants' interference was intentional as Defendants acted with the desire to interfere with Plaintiff GSA's contractual and business relationships with its subtenant customers or, at minimum, Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

128.     Defendants have engaged in the intentional and improper conduct described herein, which has caused Plaintiff GSA to sustain damages including, but not limited to, the following: (a) damages in the form of harm to Plaintiff GSA's contractual and business relationships with its subtenant customers, and (b) damage to Plaintiff GSA's business reputation and goodwill, which is based on its ability to afford wireless providers reliable access to associated infrastructure, including wireless communications towers, such as the one that is part of the Tower Site.

129.     Defendants' intentional and tortious interference with Plaintiff GSA's contractual and business relationship(s) was for an improper purpose, including for the improper purpose of attempting to force Plaintiff GSA's to abandon its leasehold interest prior to the expiration of its term.

130.     Defendants' conduct was intentional, willful, wanton, malicious and oppressive, was done with an evil motive or intent and/or demonstrates reckless disregard for, or callous indifference to, the rights of Plaintiff GSA.

131.     As a direct and proximate result of Defendants' tortious interference with Plaintiff GSA's contractual and business relationships, as described herein, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial in excess of $75,000, including, but not limited to, general, compensatory, consequential, and punitive damages.

132.     Plaintiff GSA further prays that a mandatory and/or prohibitory injunction be issued, requiring Defendants to cease and abate said interference.

133.     Plaintiffs demand and are entitled to judgment against Defendants for damages in excess of $75,000, together with and including interest, costs, expenses, punitive damages, and attorneys' fees, and Plaintiffs further request that this Honorable Court enter an injunction and/or award specific performance requiring Defendants to act in accordance with the Easement and provide Plaintiffs with unfettered access to Parcel 2, the Leased Premises, and the Tower Site, and award such other and further relief as this Court deems just and proper.

## COUNT VI – DECLARATORY JUDGMENT
### *Plaintiffs v. Defendants*

134.     Plaintiffs incorporate by reference the preceding paragraphs as though the same were fully set forth herein.

135. This action is filed, in part, pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, to determine an actual and justiciable controversy regarding the parties' rights in relation to the Easement and Lease.

136. Despite Plaintiffs' repeated demands that Defendants permit unfettered access to Parcel 2 and/or the Leased Premises and Tower Site and otherwise refrain from impeding Plaintiffs' and/or Plaintiff GSA's subtenant customers' unfettered access to the Leased Premises in any way, Defendants have continually and willfully refused to do so.

137. Thus, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations in relation to the Easement and the Lease.

138. Accordingly, Plaintiffs request a judicial determination and declaration setting forth the parties' rights and obligations, which is necessary and appropriate in order to: (a) avoid a multiplicity of actions; (b) enable the parties herein to ascertain their rights and duties with respect to the Easement and Lease; and (c) prevent any obstruction of or interference with Plaintiffs' right(s) to unfettered access to Parcel 2, the Leased Premises, and the Tower Site.

139. In the alternative, in the absence of an express easement, Plaintiffs request a judicial determination that Plaintiffs have an implied easement—whether by prior use or necessity—over Parcel 1 to access the landlocked Parcel 2 and the Leased Premises.

140. Declaratory relief will clarify the rights and obligations of the Parties and is, therefore, appropriate to resolve these actual and justiciable controversies.

141. Plaintiffs demand and are entitled to a judgment in their favor and against Defendants declaring as follows:

(a) Declaring that the Easement is valid and enforceable;

(b) Declaring that, in accordance with the Easement, Plaintiffs have a non-exclusive easement over and through Parcel 1 for unrestricted access to Parcel 2, the Leased Premises, and the Tower Site;

(c)     Declaring that Defendants are prohibited from restricting, interfering, and/or preventing Plaintiffs and GSA's subtenant customers (and its or their respective contractors, invitees, or representatives) from accessing Parcel 2, the Leased Premises, and/or the Tower Site via the Easement;

(d)     Declaring that Defendants are prohibited from restricting, interfering and/or preventing Plaintiffs' and GSA's subtenant customers' (and its or their respective contractors', invitees', or representatives') maintenance and operation of the Tower Site;

(e)     In the alternative, declaring that Plaintiffs have a non-exclusive implied easement over and through Parcel 1 for access to Parcel 2, the Leased Premises, and/or the Tower Site; and

(f)     Awarding to Plaintiffs their attorneys' fees, all of their costs of suit and such other relief, in law and equity, as this Honorable Court deems just and appropriate or as is otherwise permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(a)     Damages in excess of $75,000.00, plus interest at the maximum rate allowed by law for Defendants' unlawful actions from the earliest date allowed by law until paid in full, and all costs incurred;

(b)     An Order granting the following declaratory relief and/or specific performance:

    i.      Declaring that the Easement is valid and enforceable, such that the parties are required to act in accordance with its terms;

    ii.     Declaring that, in accordance with the Easement, Plaintiffs have a non-exclusive easement over and through Parcel 1 for unrestricted access to Parcel 2, the Leased Premises, and the Tower Site;

    iii.    Declaring that Defendants are prohibited from restricting, interfering, and/or preventing Plaintiffs and GSA's subtenant customers (and its or their respective contractors, invitees, or representatives) from accessing Parcel 2, the Leased Premises, and/or the Tower Site via the Easement;

    iv.     Declaring that Defendants are prohibited from restricting, interfering and/or preventing Plaintiffs' and GSA's subtenant customers' (and its or their respective contractors', invitees', or representatives') maintenance and operation of the Tower Site; and

    v.      Declaring, in the alternative, that Plaintiffs have a non-exclusive implied easement over and through Parcel 1 for access to Parcel 2, the Leased Premises, and/or the Tower Site.

26

(c)     An Order granting the following injunctive relief and/or specific performance enjoining Defendants from:

i.      blocking, obstructing, restricting or otherwise interfering with Plaintiffs' express access easement over Parcel 1 to access Parcel 2, the Leased Premises, and the Tower Site;

ii.     blocking, obstructing, or otherwise interfering with Plaintiffs' maintenance and operation of the Tower Site;

iii.    infringing Plaintiffs' rights under the Easement, Lease, and applicable law to unfettered access to Parcel 2, the Leased Premises, and the Tower Site; and

iv.     maintaining a padlock on the gate at the entrance of Parcel 1 or otherwise interfering with Plaintiffs' access rights to Parcel 2 in any way.

(d)     Pre- and post-litigation interest at the maximum rate provided by law;

(e)     Reasonable attorney's fees;

(f)     Punitive damages;

(g)     Costs of this litigation; and

(h)     Such other relief as this Honorable Court may deem just and proper.


This 10th day of September, 2024.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP


*/S/ MEGAN M. STACY*

By:_____

Megan M. Stacy, Esquire
NC Bar No.: 47108
Email: mstacy@grsm.com
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601
Telephone: (919) 787-4555
Fax: (919) 741-5840
*Counsel for Plaintiffs, Global Signal Acquisitions IV LLC; and Global Signal Acquisitions LLC*

27